Erin Marcino appearing on behalf of the appellant and plaintiff, Brenda Brinsdon. I've reserved five minutes for rebuttal. No official, high or petty, not even a school teacher or school principal in our public school system in McAllen, Texas, has the authority to prescribe what shall be orthodox and nationalism, or force citizens, here 15-year-old students, to confess by word or act their faith therein. This is the state of the law, and this has been the state of the law for the last 72 years. This case centers around a graded assignment given to students in the Spanish III course in McAllen Independent Achieve Early College High School. This assignment required that the Spanish students stand up at attention, recite their allegiance to the country of Mexico, and raise their hand to a 90-degree angle during the portion of the pledge where the students would utter by word that they were dedicating their existence to Mexico. Can you demonstrate to me the 90-degree angle? I could not figure it out from the... We were practicing it in conference. The students were required to stand at attention and lift their arm up so it would be then parallel to the ground at a 90-degree angle. And the arm was raised as a flag salute and then lowered after the students would dedicate their existence to Mexico. Brenda Brinston brought two claims before the district court. The first claim was to vindicate the loss of her constitutional right to free speech to be free from compulsion and coercion from pledging her allegiance to a country. The second portion of her first claim on free speech was to vindicate her removal from her Spanish III course for objecting to the pledge assignment and for publicly discussing the pledge assignment. Well, the retaliation issue was resolved on summary judgment, and the court found you did not have evidence to show that was the basis. Is your issue basically there were disputes, material fact, and it should have been resolved at that level? Your Honor, there is no material fact on that claim. The finding of the court was that essentially the court misapplied Tinker and stated that Brenda's removal was constitutionally valid because she created a substantial disturbance. Therefore, Tinker supported the removal from the Spanish III class, which is not supported by the record. Well, that's what I'm saying. It's an evidentiary argument, it seems to me, that you're making more than a legal argument on that summary judgment point. It seems to me that why she was removed is a fact question, and you think the fact is clearly resolved one way. Actually, the basis for her removal is not contested. Taking everything that the defendants have pled as true, the removal simply would not be supported by Tinker. Why is that? Why is that? Because they're stating that it rises to the level of a substantial disturbance in the class that Brenda was merely present in the class, that she objected to the Pledge of Allegiance, that it, I guess, upset one student, although there's no evidence that the defendants have supplied that it actually did upset one of the students, and he was never offered as a witness nor testified at either deposition or trial. Wasn't there evidence that she disrupted other students taking the pledge? That's all the school district is pointing to, is that there's this hearsay witness, and Brenda was asked about the hearsay witness at her deposition, and she stated that there really was no issue. The student is a friend of hers, and there was no issue, and she was pulled out of class. When you look at the undisputed facts, when you look at the record— I don't understand what you're saying. Is there evidence that she made any kind of disturbance that prevented the other students from taking the Pledge of Allegiance? No, Your Honor. There's really not, other than— There's no affidavit in from the other side that says that? The other side is claiming that there's this hearsay witness that she created— Why is it a hearsay witness? Why is it a hearsay witness? Because it's a witness who never testified in this case, who the defendants never had—they never supplied an affidavit from this witness. Somebody quoted this witness? What's the evidence that you're referring to as hearsay witness? It would be a statement by Roberto Gomez, who is a friend of Brenda Brinston, who was asked—Brenda was asked at deposition whether or not there was any issue with this student, and she said, no, there really wasn't. I guess he was upset, blightly, when the video was released from the school where it depicts the student saying the Pledge of Allegiance and raising the arm at a 90-degree angle, but that was resolved, and it didn't create any sort of disturbance in the actual classroom. Why Brenda Brinston was taken out of Spanish 3 for the entire semester is very perplexing. When you look at the record, the record on Appeal, on page 222, is a referral from her teacher, Reyna Santos, asking for Brenda to be removed because of verbal rumors. Essentially, Brenda stated what occurred in the classroom, and the teacher did not like people knowing about it and did not like it being publicly available knowledge. So, addressing the claims before you here, three reasons why the district court's decisions require reversal. The first is that the lower court applied the wrong legal standard pertaining to compelled speech of a Pledge of Allegiance in a school setting. The second is that the lower court erred by misapplying Tinker to justify removing Brenda Brinston from the Spanish 3 class for the entire semester. And the third being that the lower court erred by entering a directed verdict on the issue of municipal liability. This truly— Can we say there was really a Pledge of Allegiance? I mean, these are American citizens in class. This is Spanish class. Mexico's Independence Day. They went through the motion of learning Spanish, reciting this thing in Spanish, but there was no intent to have these kids pledge allegiance to the country of Mexico. Was there? I mean, they went through the motions, yes. But it was part of your class to teach Spanish and the pronunciation of the words of it. But the teacher didn't really mean for these kids to rescind their allegiance to the United States and instead pledge allegiance to Mexico. Judge Prado, I don't think that you can distinguish the American Pledge of Allegiance as perhaps meaning more or deserving further First Amendment protections than the Mexican Pledge of Allegiance. But the U.S. Pledge is actually pledging allegiance to the United States every morning when the kids get up and give Pledge of Allegiance. That is pledging allegiance to the United States, whereas this was part of the Spanish class and not meant to really be a serious allegiance to a country. Your Honor, this was pledging your allegiance to Mexico. The students were required to stand at attention, raise their arm. Did they lose their citizenship? Conduct a flag salute. Did they lose their citizenship? The federal law on that matters that a person needs to be over the age of 18 to rescind their citizenship. So they didn't? That is a matter that would be within a person's heart. What is at issue here is whether the students felt compelled or coerced to pledge their allegiance to a different country. And in looking at the defendant's actions, which I think speak louder than words, as we know, defendants will often come up with excuses after a lawsuit is filed. They will often try to mitigate the damages of what occurred. And what occurred in that classroom was the Pledge of Allegiance to Mexico. It was a flag salute. It was raising your arm, and it went above and beyond just learning about culture. Counsel, you started with a quote from Barnett. I take it from what you're saying now. Barnett, you see, is analogous to the situation here. In Barnett, it was evident that the reason school officials wanted the pledge to be stated was what you're talking about, was to further patriotism, World War II. Maybe it was over by that time. Certainly was by the time of the decision. And patriotism was extraordinarily important. But the court said forced statements of patriotism are beyond the right of the state. But it didn't focus on the rights of the individual or the specific objections that an individual might have, religious or otherwise. It actually declared that was not a basis for his decision. It was just looking at the absence of any right in the government to force somebody to state allegiance or patriotism even to our own country. And so it seems to be vitally important in your case if you're using Barnett as opposed to, and the district judge didn't think Barnett was directly applicable, so as opposed to some other cases, important for there to be a fact finding for it to fit Barnett that that's what this teacher was doing. And the district judge, in her opinion, says how there is no evidence. And it would be a different matter. I don't know how she put it exactly. But she said if there was some evidence that this teacher actually was trying to affect the allegiances of American, I don't know if they were citizens or not, of American students, that would put this in a different category. So to use Barnett, don't you need not just to speculate but to have evidence that that is what the teacher was trying to do was, as in Barnett, to make compulsory some patriotic ceremony to Mexico? And it seems to me that evidence isn't there. Under that standard, I'll... Aren't you applying Barnett? Aren't you saying Barnett's your case? That's what you've been talking about so far. This case requires a state-forward application of Barnett. And isn't it necessary on Barnett to show that the reason for this was to inculcate allegiance to whatever the pledge is to? And in this case, it's Mexico. To quote Barnett, a pledge of allegiance is one of those compulsions which necessarily pervades so much of the educational process. By allowing a teacher to simply make an excuse for why the teacher is making his or her students pledge their allegiance to the United States, say in a history class or social studies class, or pledge their allegiance to any other country or make any other statement of nationalism, I mean, that would be a very dangerous precedent because then the teacher could come up with myriad excuses to explain away behaviors that are simply unconstitutional. But if an action is brought against that, the mere statement by the teacher of her or his purposes would not be controlling and you'd be allowed to pursue that as you were in this case. At least it's not been an objection of any limitation on discovery or other evidence to show that's what the teacher was doing, if you want to apply Barnett. And that evidence isn't here. And you're just saying sort of as a matter generically, any pledge of allegiance is automatically subject to Barnett no matter the reason for why it's being said. Is that your position? Yes, Your Honor, and that's the holding in Barnett, is that requiring students to pledge their allegiance to a certain country and declare a statement of nationalism is something that is afforded special First Amendment protections. And compulsion is unconstitutional. The same is true here where you have students, the majority of students are fluent in Spanish, Brenda is fluent in Spanish, and she was required to stand up and salute the Mexican flag, describing the flag as a symbol of unity, and then stating that she would always be loyal to Mexico, the nation to which she dedicated her existence. This certainly goes above and beyond a simple cultural lesson. Well, let's say I'm even using Barnett, you're at least hearing one judge who thinks it's a poor fit without more evidence. Do you have an alternative argument as to why this would be inappropriate? Absolutely. Looking at the different cases that were applied by the district court, the district court actually said that Hazelwood was the most pertinent case here, which it simply is not. When looking at Hazelwood, that deals with whether or not a school can edit student speech in a non-public forum being a student newspaper, because the student newspaper bore the imprimatur of the school. That is not analogous here. When looking at Axe and Flynn, which is the Tenth Circuit case, which the Tenth Circuit actually remanded the case down for further factual finding, when looking at that case, that also does not give credit that you can force a student to pledge their allegiance to a certain country. When looking at the O'Brien case, O'Brien, which was decided one year before the landmark decision in Tinker, that again is not compelled speech in the school setting, and it does not deal at all with any sort of statement of nationalism, such as the loyalty oath, which is the pledge of allegiance to a certain country. Before your time runs out, I want to ask you a couple of questions. Number one, do you agree or disagree that the equitable claims are moot because the minor has graduated from the high school, and no indication she's going back there? Absolutely disagree. Looking at the court's grant of certiorari in the Morse case, it simply does not equate mootness when a student has graduated. Secondly, I don't think that it's contested at all that the nominal damages claim are very much alive for all defense. I'm not asking you about the nominal damages, just the equitable claims. Oh, I disagree. Also, there's information in Brenda Brinson's permanent educational record, such as the referral that I was referring to earlier, the record on appeal, page 222, that is in her permanent educational file, and we would want injunctive relief to remove referral and any negative information that is in her permanent educational file. Let me ask you one other question. Is there any evidence that the school board, which I assume would be the policy makers for the school district, had knowledge that this assignment was regularly made? There is, Your Honor. If I may answer your question? Yeah. I'll save it for another time. On municipal liability, No, no, I'm asking for the record now. What can you point to in the record that shows that the board members were aware of this? Yes. William Brinson, Brenda Brinson's father, called the school board, and he testified to this during the trial, that he called the school board and spoke with the president of the school board to complain about the policy and custom that was in place. But before the assignment was given, did the school board know anything about the fact that it was going to be given? Yes. So the Federal Rules of Procedure 13... No, no, no. I'm asking for a record now. Yes. Is there anything in the record that the board members knew that the teacher was going to give this assignment? When looking at constructive knowledge... No, no, no. I'm asking for something in the record now. Yes. Well, I believe that the school board had actual knowledge through the contacts between William Brinson and the school board. Secondly, in terms of constructive knowledge, the school district certainly had constructive knowledge. When you look at Defendant Cavazos' testimony, and this was occurring at a different school, mind you, because the McAllen Independent Achieve Early College High School has only been in place for the last two years, and Defendant Cavazos testified that all three of her children have recited the Pledge of Allegiance to Mexico in the Spanish III course, and her oldest child was age 15, so this has been in place and was a custom, a school district-wide custom, for the last 15 years. Thank you very much. Thank you very much. Okay, Mr. Vail. Good morning. May it please the Court. My name is Joseph Vail, and along with my co-counsel, Ms. Adriana Cardenas, we represent the Appellees in this appeal. We are splitting our time today, and my plan is to cover the two summary judgment rulings, and then she was going to talk about municipal liability, but of course I'm open to answering any kind of questions the Court has. I know that this case was disposed of in three rulings. It was disposed of first by granting summary judgment on qualified immunity with regard to whether Barnett clearly establishes Brenda's rights in this case, and then secondly, the Court also granted summary judgment saying that there was no genuine issue of material fact on the issue of Brenda's removal from the classroom. I'm going to start with the compelled speech issue in Barnett and just kind of track with what the discussion was earlier here. This case is factually— Let me ask you, just to make sure I don't forget it later, has there ever been a ruling as to whether the plaintiff was compelled to state the pledge? No, Your Honor. That's actually an open fact question according to the district court. So once the ruling, direct verdict was entered that mooted or at least kept that issue from ever being resolved? Yes, Your Honor. It would need to be tried as our position. There was testimony at summary judgment from Ms. Brinson that she said the pledge after she objected, and then there was testimony from Ms. Cavazos, the principal, that conflicted with her timeline because Ms. Brinson said she objected, went to the principal's office, and then came back and recited the pledge. Ms. Cavazos testified by her deposition that she walked Brenda back to the class and then got her the alternative assignment. Even under Ms. Brinson's testimony, though, there's still also a question of whether she was compelled because at the time, it's undisputed that she's never recited the pledge for a grade. She said she came back to classroom and that the teacher had threatened to punish her for leaving the class without permission, and she says that that's the reason she said the pledge. But, again, that was for a different reason. The teacher didn't threaten her at that time. So that is the open issue on compelled speech. But the issue really before the court is whether Barnett clearly establishes this right. And I think our position is that regardless of whether she was compelled or whether that even violated her rights, the district court should still be affirmed because Barnett deals with a very different factual situation than this case. I think Judge Southwick and Judge Prado, both of you talked about this issue of, well, there's no operative pledge here. There's no evidence of an operative pledge. In fact, the evidence is uncontroverted to the contrary. But, Counsel, if you're a high school 16-, 17-year-old and you're made to raise your hand and look, stand at attention and look at the Mexican flag rather than just recite the words, in the mind of a teenager, don't you think that might look like you're being required to pledge allegiance to a foreign country? Your Honor, I think that in this case the problem is that the assignment was given as basically a role-playing exercise, as a cultural and linguistic exercise. The students were using this as an opportunity to learn about the language and culture of Mexico. So during the week of Mexican Independence Day, this is a very different. The Barnett opinion is all geared towards a situation where the government is trying to set an orthodoxy, as the quote talks about, and then force people to show their faith in that orthodoxy. This is a one-time assignment where the students were given three days to do their best to memorize the pledge, and there's no evidence that they're... and then they never did it again. It was a one-time assignment in a Spanish course. So the Barnett opinion does not really contemplate this situation because Barnett is... the justification the court is giving is talking about... they call it officially disciplined uniformity, and they're talking about this issue... they're distinguishing the United States' government system from Hitler's... the totalitarian governments that the United States was fighting at war with at that time, and talking about that this is a very... this is... so Barnett's application of this case is at least questionable. And it's not... Counselor, it seems to me that Judge Prado is having to respond to... The whole issue of compelling a pledge is tainted with the risk of Barnett. And it was clear in Barnett what was going on, and perfectly acceptable to the American population, no doubt, that people at that time, and even today, need to be pledging allegiance to this country. So to have this in Spanish class at least raises the specter of Barnett, and do we look at the motivations of the teacher, as I was asking you opposing counsel, is that when Barnett becomes relevant? This was not a continuing thing as in Barnett. This was a one-time pledge, as you indicate. But the hypotheticals that flow from this are troubling. Just what other classes, what other kinds of pledges could be required, and do we have to get into the head of the teacher who is instructing that, or is it what a third person would think when that pledge was being done? So I will say this may not be straightforward Barnett, but it is at least worrisome that a pledge like this is being made at this age of a student with whatever overarching considerations that you worry the teacher may have for having made that. Maybe not this teacher, but maybe the next teacher. What is she doing? Why is she doing this? There are certainly a lot of other ways to teach Spanish without pledging allegiance to Mexico. Your Honor, there are other ways to teach Spanish without pledging allegiance to Mexico, and I understand the court's concern. I think that the court would have to analyze these kinds of questions as they arise based on the facts of what happened in that case. I do think that, yes, the part of the problem with this area, too, is how much deference the court generally affords to educators so they can fulfill their educational mandate and choose which assignments that they think are best, and that's coming from this Hazelwood case, which I understand the plaintiff argues does not apply. Our position has been that it does apply, that this is a school-sponsored speech under that decision, and at least the Tenth Circuit has found that the Hazelwood v. Kohlmeyer opinion would apply to compelled speech, which seems to clearly include an assignment. Now, I understand that this— Isn't Hazelwood at best a compelled silence case? It's a censorship case. It's a lot of things, but you can't say that is what Hazelwood ultimately holds. And here we're saying you must say this. That is true, Your Honor. Again, we rely on this Axe and Flynn case and the quarter case from the Tenth Circuit, but the Hazelwood case does involve compelled silence. I would agree with that, Your Honor. But the principle of the Hazelwood case, that the student's rights are not coextensive with the rights of adults and other non-school settings, it would seem that educators must be able to compel students to say, to speak regularly and without much scrutiny from the Judiciary or threat of lawsuits. Unless they're compelled to say something the Supreme Court has said, you can't be compelled to say. Yes, Your Honor. But the Supreme Court, again, our argument was that Brensden does not extend to this context. Well, what are the district court's standards? I wouldn't ask you to buy into that statement. The court finds that a school's compulsion of a direct, personally attributable, so direct and personally attributable expression of belief is permissible if that compulsion is necessary to facilitate teaching. I don't think you've embraced that exactly. Is it necessary to adopt that, or is it worthwhile to adopt that position as a new standard? Is it necessary for this Court to adopt the addition? I'm sure it's not necessary. We can just affirm on any basis we want to in your mind. But is that a worthwhile standard, and do you agree with it? Your Honor, I think that we disagree with that standard. We disagree with the outcome of the case in the sense that this isn't clearly established, because it's not – there is no case really applying Barnett, extending Barnett to this kind of assignment to the extent that it does apply. And that there are cases, and I think Judge Alvarez in the court below in her opinion on the last page on the qualified immunity, she talks about how she thinks the Tenth Circuit would have reached a different result than she did and would have just applied Hazelwood. So that's part of her reasoning for finding the qualified immunity here. What the district judge, though, I think she's not – she – along the lines of what you were just saying about how Hazelwood doesn't really deal directly with a compelled speech case, she then draws on other authority from O'Brien and from the Littlefield opinion from this Court dealing with a school uniform policy. And so she comes up with this no more than necessary. Now, we don't really know exactly what – how she intended to apply that standard, but we do think that this – again, our position is that Hazel – ultimately Hazelwood should be the applicable standard for a role-playing exercise, even if it does involve speech. What's the record show on the disruption point? On the disruption point, Your Honor, the record shows that what happened was – is that Ms. Brinson objected to the assignment, and then she was allowed to go back to the classroom and stayed in the classroom for about a month. Are you saying what's undisputed? This is undisputed, yes, Your Honor. Keep going. So is this – yeah, Ms. Brinson – actually she pleads it in her pleading. She wasn't removed until October 18th or 19th, and that's the same thing she testifies to. But what happened was is that she went to the – she – after the – at some point she went into the classroom and secretly videotaped her other classmates, and then roughly a month later she released that – she and her father released that to the media. So that's what kind of precipitated the action the school – the – Ms. Cavazos took in this case. There is evidence in the summary judgment record that that's a violation. So was she taken out of the courtroom because she – taken out of the classroom for the rest of the semester because she would not give the pledge or because she secretly tape-recorded in class? I mean was she being punished for what she did as far as taping the classroom or is – was it based upon not giving the pledge or – why was she taken out of the classroom? She was not – there was no testimony that she – she was not taken out for the pledge because she was allowed to stay in the classroom for an entire month after the pledge. And, in fact, they – it's undisputed that the teacher and the principal gave her an alternative assignment. What happened was is that a day or two before she was removed from the classroom, the school found out that she had secretly recorded this video. And then that factor – that factoring with the student's reaction to it, and there is evidence in the record contrary to what the counsel said, and I'll address that really quickly here, that Ms. Cavazos, the principal, testified that Brenda had created a hostile environment in the classroom both for the teacher and the other students because there was evidence that the student – there was a minor student in the video. His parents came and complained to the principal before the student – before Ms. Brinsden was removed and also that the student felt betrayed. And that's on page 175 and 176 of the record on appeal. So Ms. Cavazos – the way the evidence looks is that it wasn't that she was retaliating against the – against her refusal to say the pledge. It was the circumstances that the school was receiving a lot of hate – a lot of threatening and angry mail to, but also that the – that Ms. Brinsden had violated her – the fellow students' rights by recording minor students against their will and without their permission and used that as her – as to try to get attention from the media for this. So she was not – I mean there's some testimony in the record from Ms. Cavazos that she was not disciplined, and it wasn't a disciplinary measure. What Ms. Cavazos testified was that she needed to separate the students to protect both Ms. Brinsden and the other students and put her in an alternative assignment. But this high school only has 14 or 15 teachers. Did it affect her other classes with other students? No. It was only pulled out for the Spanish class, and then she completed it by exam and is undisputed that she passed the course and received credit. I'm looking at the district judge's explanation of this evidence, and it may be getting to the hearsay witness that opposing counsel was referring to. But the evidence of disruption, it seems to me, is key to whether this could be resolved on summary judgment. Defendants assert that the removal was due to the effect that the video release had on the classroom atmosphere, directing the court to deposition testimony that other students had become antagonistic. Now, the fact they didn't like her, if that's what antagonistic means, it cites three or four pages of a deposition. I'm not sure that's supporting disruption. Video student – videotape student felt betrayed. I'm not sure that's disruption. Negative publicity was causing tension in the school. I'm not sure about all that, but I haven't looked at those depositions. And then in conclusion, the district judge says plaintiffs did not provide summary judgment evidence that her objection, and more importantly, the publication of the video, did not cause interference. So, I mean, she's saying, district judge, it needs to be disputed material fact. But nonetheless, there does need to be adequate evidence, unchallenged on summary judgment, that taking her from the classroom can be supported by disruptions she was causing by being physically in the classroom. So, is there just this one statement? I'm trying to point to opposing counsel behind you there. This one statement by one student, or what is there to support that there actually was, other than people didn't like her because of what she did, that was actually disrupting the classroom? Ms. Brinsden herself testified, and she testified that she was being – that the other students were starting to – were bullying her and shunning her for – shunning her. That's the word in her testimony. And her father also testified along those lines too. So there was other evidence that students were upset for the fact that they were – that they had been filmed and put into this video. There's no evidence that the students reacted to the initial objection to do the assignment. And there's no evidence that anybody reacted. And, in fact, I think that the district court is also saying, or at least the way we understand her opinion, is that the school – it was established as a matter of law the school was not reacting to her speech. So – and that's kind of shown in the action the school took. The school didn't suspend her or tell her that she couldn't say the speech. So there's a question about whether – how much Tinker even really applies the situation. But to the extent it did, Tinker specifically says that if you – if the student – I may have finished this thought. I'm sorry. I don't understand. The student – if the student impinges on the rights of her other – of the other classmate. So that does – is something that the educators can respond to and satisfy the issue in Tinker. Thank you. Thank you, Counsel. Let's see. Ms. Cardenas. Good afternoon. The district court was correct in its ruling when it granted judgment as a matter of law in favor of McAllen Independent School District on the issue of municipal liability. And the Monell Court has clearly established that municipal liability cannot be held on a theory of respondeat superior. And that's basically what drives this case. The Piotrowski case in this court has set out the elements that are necessary for municipal liability, mainly meaning you have to have a policymaker, an official policy or custom that was a moving force of a constitutional violation. Counsel – opposing counsel says that there was evidence that the school board had been aware of this for years. Does that fit with Monell or do you disagree with the evidence? I disagree with the statement that there was evidence. I think the record is clear that there was no evidence that the school board had any knowledge of this particular assignment. There's none. There's no question with regard to what the school board knew. Is there evidence, though, that this assignment had been given over a number of years? The only evidence that we have in the record is the testimony from Ms. Cavazos, who was the principal of the school. What Ms. Cavazos testified to, and she was very specific in her testimony, was that in her situation, based only on her experience with her three children, they did, in fact, do a similar assignment. That's the only testimony of a prior incident of this particular assignment. Over what period of time did that come? She said that they were adult children at the time of the trial in their 30s and late 20s. So if we deduce from there, subtract the aging, it would have been, I guess, 15 years prior to that. But she was very particular in saying my only information I have is based on basically as a mother, not as any representative of the school board. The courts are very clear that a principal is not the school board, is not the policymaker. So there's no evidence . . . Who prepares the curriculum for the Spanish class? I mean, is that the teacher, the principal? Must it be approved by the school board? How is a curriculum for a particular class established? The State of Texas sets out its guidelines that need to be covered in particular courses. From that, the teacher then creates her lesson plan and submits that to the principal. Where the principal reviewed it, Ms. Cavazos testified that she reviewed it to make sure that it met with the State's objectives. So did it include, we're going to have the kids memorize the Mexican national anthem? This particular lesson plan with regard to Ms. Santos' class did include an indication that they would be talking about Mexican Independence Day, that the children would be learning about the culture of Mexico. And as part of that, they were doing a number of things. One included recitation of the Mexican Pledge. The students were to dress in traditional Mexican clothing, kind of a role-playing activity. They were going to bring traditional Mexican food and go over the celebration that Mexican Independence was. And it needed to be approved by the principal? The principal, Ms. Cavazos, testified that she reviewed the lesson plans to confirm that they did, in fact, meet with the objective set out by the State, which included for a Spanish Level 3 class, it's a little bit different than you see in a Level 1 and 2 class, where you're focusing more on grammar and sort of your basic information in Spanish. At the advanced level, a Spanish 3 class included a study of history and culture and traditions of the Spanish-speaking nation. Did it need approval from beyond the principal? No, Your Honor. And there is no evidence that any particular member of the school board had any connection to this particular assignment? There's no evidence that anybody on the school board had been aware that this lesson had been given in the past? That's correct, Your Honor. There's no evidence. There were no questions of what knowledge the school board had of this assignment prior to this assignment being given. There's no evidence of any prior complaints by students or parents for having to do the pledge? Exactly, Your Honor. Ms. Cavazos testified that, based on her information, she was unaware of any prior complaint. And aside from Ms. Cavazos, there is no other testimony from anybody to testify that anybody made an objection previous to this or that anybody had any sort of problem with this particular assignment. The courts have gone on to hold that if a policy is not unconstitutional on its face, you have to show that the school district was consciously indifferent to violations. Again, we don't have any evidence that the school was consciously indifferent for the same reasons stated. There was no evidence that they knew of any objections, no evidence that they even knew of the particular assignment. So the plaintiffs cannot point to any particular policy or custom that would account for municipal liability. And the district court was correct in its ruling in granting the judgment as a matter of law. Okay, thank you, Ms. Cardenas. Thank you. Okay, Ms. Marcino, back to you. Thank you. To address municipal liability, first, in terms of municipal liability, when you're looking at the retaliation claim and whether or not the school district would be responsible under the retaliation claim, that is pursuant to Texas state law, Texas Educational Code section 32.002, and the teacher and the principal were following that state law in removing Brenda from the classroom. So that very clearly is in accordance with a policy and in accordance with state law. Secondly, in regard to the compulsion of the speech, when looking at the policies of the school district adopted by the school board, they create a system where the principal is in charge and is the final decision maker in terms of approving lesson plans. And that did occur here, and that is in the record. Looking at the record on appeal, pages 750 to 752, and record on appeal 905 to 906, this lesson plan did specifically state that the students would be pledging their allegiance to Mexico, and the principal did approve the lesson plan. So in accordance with both school district policies and also with the custom that has been around for at least 15 years, this certainly is an activity, a graded assignment that is attributable to the school district. Where do you get the 15 years now that have been going on? That is Ms. Cavazos' testimony. She has three children, all of which have participated in this graded assignment. Her oldest child is 30 years old, and with Spanish three being taken when children are approximately 15 years old, her son would have been 15 at the time, so 15 years. Then, looking at whether or not the graded assignment of reciting the Pledge of Allegiance to Mexico is compelled speech, what the record reflects is that when an assignment is issued for a grade, that puts pressure on the students. And Brenda testified to this, looking at the Record on Appeal, pages 153 to 155 and 160, and then also Defendant Cavazos admitted at trial on the stand that students always feel pressured when anything is tied to a grade. This is simply not a class activity. This is something that is expected of the students in the Spanish three class, and it is tied to a grade. And above and beyond that, in order to get a special designated diploma for being in foreign language for three years, students have to achieve and do a good job in Spanish three. So certainly this isn't something that was free of compulsion or coercion. Looking at which tests should be applied, I think this very much is the case where the Occam-Razors theory applies. And that is, of course, when looking at variable alternatives, often the simplest alternative, the clearest and straightest line from point A to point B is your solution. And that simply is applying a straightforward Barnett analysis that you would not have to create a new test, you would not have to create a subjective test that the district court created. But here it's a very bright line rule. Is it a compulsion of a Pledge of Allegiance to a country? If it is, then it's a statement of nationalism, and it is under the umbrella of Barnett. Barnett sought to avoid teaching our youth to discount important principles of our government as mere platitudes. Well, that is exactly what the school district and the defendants are advocating for, to view the Mexican Pledge of Allegiance as lesser than the Pledge of Allegiance to the United States. Therefore, Your Honors, I would ask that you follow what has been in place for the last 72 years in Barnett and also follow the substantial disturbance standard that has been in place for the last 46 years in Tinker and reverse the lower court's rulings. Well, Counselor, I appreciate the education about Occam's Razor. You had me for a moment there. And you want the simplest possible test. It seems to me if Barnett does not apply, I'm not asking you to accept that, a test that looks more I mean, it took some courage to take this stand. And whether it's protected by Barnett or not, Barnett wouldn't look to that. It seems to me some test in which the strongly held personal beliefs of patriotism, religion, or something else, even in the school setting, some test might have some role to play. And I don't know if this case raises it or not. You've been trying to make it very simple for us. And if I at least don't buy your simple point, the other two may. I'm trying to think if there's any other standard that would work here. And I'm not asking you to spend your last non-seconds to tell us what that standard may be. But this is an interesting and troubling case. And we now have it under advisement. Thank you, Your Honor. Thank you very much. Out of curiosity, where's your client these days? Is she in college or out of college or where is she? She wants to go to college. I guess she's not going to be a Spanish major. She could be. She's fluent in Spanish. All right. Thank you very much. Thank you very much.  That completes the calendar for the morning. And we'll be at recess until 2 p.m.